UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:25-CR-00010-WLO

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| | ) | |
| v. | ) | GOVERNMENT'S AMENDED TRIAL |
| | ) | BRIEF AND MOTIONS IN LIMINE |
| | ) | |
| | ) | |
| EUGENE MONTALE JENKINS | ) | |

The United States, by and through the United States Attorney for the Eastern District of North Carolina, submits its trial brief outlining anticipated testimony of witnesses and potential evidentiary issues in the upcoming trial of this case. The government further moves *in limine* for the admission of the government's evidence described below, as well as the exclusion of certain evidence and arguments. This trial brief is a summary of the evidence the government currently intends to introduce at trial; the government may offer additional or different evidence depending on how the case unfolds at trial.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

The defendant was charged in a three-count indictment to possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count One); possession with intent to distribute forty (40) grams or more of a mixture and substance containing fentanyl and ANPP, and a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count Two); and possession of a firearm in furtherance of a

1

drug trafficking crime, in violation of 21 U.S.C. § 924(c)(1)(A)(i) (Count Three). The defendant has pled not guilty, and trial is scheduled for February 2, 2026. The government is not proceeding on the allegations of ANPP and marijuana as alleged in Count Two.

Beginning in March 2023, Edgecombe County Sheriff's Office (ECSO) launched an investigation into the defendant and his distribution of narcotics. To corroborate information received by confidential sources of information (CS), ECSO began physical surveillance of a residence located at 1704 Windsor Drive in Rocky Mount, North Carolina believed to be used by the defendant as a drug stash house.[1] The residence was not leased or owned by the defendant.[2] During the physical surveillance, ECSO observed heavy foot and vehicle traffic. The visitors stayed at the residence for short durations. ECSO believed this conduct to be consistent with individuals visiting the residence to purchase illegal drugs.

Between March 2023 and July 2023, ECSO conducted five controlled buys of purported heroin from the defendant, the first of which was March 30, 2023. ECSO facilitated the buys in accordance with their office practice, which included using a CS and equipping the CS with audio/video recording equipment. The CS met with the defendant at 1704 Windsor Drive for each buy. During three of the five buys, the defendant retrieved the drugs from the back of the residence. The fifth and final buy

---

[1] 1704 Windsor Drive is a small single bedroom, single bathroom duplex with a living room and kitchen.
[2] The defendant's physical address known to law enforcement is his mother's residence located at 702 Marlee Drive, Rocky Mount, NC. This address is approximately 0.5 miles from the 1704 Windsor Drive house.

2

took place on July 12, 2023.

Approximately 3 ½ hours after the final buy on July 12, 2023, ECSO applied for and received a search warrant for 1704 Windsor Drive. The search warrant was executed the same day. When ECSO arrived at the residence, the defendant and two other uncharged individuals were inside. The defendant and the two other individuals exited from the back door which was accessible from the bedroom. After initially exiting the residence, the defendant ignored the commands of ECSO to get on the ground and briefly went back into the house, removed something from his pants pocket, and tossed it behind the back door. The defendant then exited the residence for a second time and was detained without incident. During a brief conversation with the defendant, as ECSO read the warrant to the defendant, the defendant spontaneously and repeatedly asked officers, "How did we get to this?" The officers responded, "You've been selling heroin. We've been buying from you." This interaction is recorded on body camera.

Once the defendant and the other two individuals were detained, ECSO searched the residence. In the bedroom of the residence ECSO found over 6,000 bindles of suspected heroin[3], along with over 100 grams of a green, leafy substance in a plastic bag.[4] The bindles of heroin were inside of an orange and blue bookbag on top

---

[3] Lab analysis determined the substance in the glassine bags to contain fentanyl, a Schedule II controlled substance. The government is not proceeding on the ANPP allegation in Count Two of the Indictment.

[4] The government is not proceeding on the marijuana allegation in Count Two of the Indictment. However, the government does intend to introduce a photograph taken during the search that shows some of the bindles of drugs that are within the same bag as the green, leafy substance recovered during the search. The government does not intend to illicit testimony from any witnesses that the substance is marijuana or any other controlled substance.

3

of a mattress. By the back door of the bedroom, in the area the defendant accessed before exiting the residence the second time, ECSO located approximately three ounces of a white, powdery substance.[5] ECSO also found U.S. currency an unknown quantity of live ammunition and various items of drug paraphernalia to include multiple digital scales, glassine bags, stamp pads and stamps which were also located in the bedroom. ECSO noticed that a mattress in the bedroom was damaged and in a void of the damaged area, ECSO found a handgun. According to ECSO, the void of the mattress where the handgun was located was approximately two feet from the bookbag of fentanyl. Aside from a single digital scale with white residue that was found in the kitchen, and a trail of U.S. currency leading from the living room to the back door of the residence, all items of evidentiary value were found in the bedroom.

CS' statement re: the defendant's prior possession of firearms

On January 30, 2026, during trial preparations, the government met with the CS involved in the controlled buys from the defendant. During the conversation with the CS, the CS described that it was normal to see the defendant possess a firearm. The CS indicated that the defendant concealed the firearm on him and once he would enter the residence at 1704 Windsor Drive, the defendant would remove the firearm from his person and put it away somewhere within the residence. The CS went

---

[5] The white, powdery substance was tested and confirmed to be a Schedule II controlled substance. However, it is not charged in the Indictment, and the lab results should be provided to the government on January 28, 2026. The defendant has been notified that these results exist, and the report is forthcoming. They will be turned over to the defendant in accordance with the government's ongoing discovery obligations. The government does not intend to illicit testimony from any witnesses that the substance is a controlled substance. However, the government does intend to introduce a photograph taken during the search that shows U.S. currency recovered from the bedroom. The bag containing the white, powdery substance is in the background of this photograph.

further and described a specific instance when the defendant possessed a firearm. The CS detailed that in late 2022 or early 2023, the CS was at 1704 Windsor Drive, and the defendant was also there. Another individual the CS knew as "B-Lord" was also at the residence. The CS described that "B-Lord" had stolen drugs from the defendant and in response, the defendant beat "B-Lord" badly with the firearm. The CS stated that witnessing how badly the defendant beat "B-Lord" made the CS feel sick to the CS' stomach.

## ARGUMENT

I. <u>The Government May Introduce Evidence of Uncharged Controlled Buys from the Defendant.</u>

The controlled buys from the defendant that took place at 1704 Windsor Drive are intrinsic to the charged offenses and therefore not governed by Fed. R. Evid. 404(b) or, alternatively, such evidence should be admitted under Fed. R. Evid. 404(b)(2) for non-propensity purposes. The buys established the need for ECSO to search a residence the defendant did not own and of which he was not a tenant. Further, the defendant's use of the residence between March and July 2023 provides circumstantial evidence of the defendant's *mens rea*, that is, his knowledge and intent of the fentanyl and firearm found in the residence and his possession of them.

**A. The controlled buys from 1704 Windsor Drive that supplied probable cause to issue a search warrant for the residence is intrinsic to the charged offenses.**

Evidence that "concerns acts 'intrinsic to the alleged crime'" do not fall under the limitations of Rule 404(b). *United States v. Otuya*, 720 F.3d 183, 188 (4th Cir. 1996) (quoting *United States v. Chin*, 83 F.3d 83, 87-88 (4th Cir. 1996)). Moreover,

5

"[i]t is well-established . . . that the mere fact that the evidence involved activities occurring before the charged time frame . . . does not automatically transform that evidence into 'other crimes' evidence." *United States v. Kennedy,* 32 F.3d 876, 885 (4th Cir.1994).

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "The Rule 404(b) inquiry, however, applies only to evidence of other acts that are extrinsic to the one charged. Acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence." *United States v. Palacios*, 677 F.3d 234, 244-45 (4th Cir. 2012). "[U]ncharged conduct is intrinsic [if it] arose out of the same series of transactions as the charged offense, or if evidence of the uncharged conduct is necessary to complete the story of the crime on trial." *United States v. Siegel,* 536 F.3d 306, 316 (4th Cir. 2008) (cleaned up). Additionally, Rule 404(b) "does not apply to evidence introduced to prove a substantive element of the offense charged." *United States v. Zelaya*, 908 F.3d 920, 928 (4th Cir. 2018).

Here, the buys are circumstantial evidence of the charged offenses. Count One requires the government to prove the defendant knowingly possessed a firearm as a felon, Count Two requires the government to prove the defendant knowingly possessed fentanyl with the intent to distribute it, and Count Three requires the government to prove the defendant knowingly possessed the firearm in furtherance of a drug trafficking crime. The buys from the residence, three of which took place in

6

the bedroom or after the defendant accessed the bedroom, and where all the drugs and gun were located during the search, is evidence of the defendant's constructive possession of the drugs and the gun. Further, the buys support that the defendant possessed the fentanyl with the intent to distribute it because he *actually* did so on multiple occasions prior to the execution of the search warrant, including the day of the search warrant.[6] The controlled buys are evidence necessary to establish elements required for all three of the charged offenses of the indictment.

Moreover, "How did we get to this?" were the words of the defendant after he exited 1704 Windsor Drive and was detained. ECSO responded and informed the defendant that the agency had been buying from him. The buys are intrinsic facts that arose out of the same series of transactions as the charged offenses and such evidence is necessary to complete the story of the crimes on trial. *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (cleaned up). Therefore, they should be considered inextricably intertwined with the crimes charged in the indictment and admissible.

### B. In the alternative, the controlled buys are admissible to prove intent and knowledge.

Even if the Court were to determine that the government's proposed evidence is not direct and intrinsic evidence and instead constitutes "other acts" evidence under Rule 404(b), it is still admissible to prove the defendant's intent and knowledge. Fed. R. Evid. 404(b)(2). The Fourth Circuit has long interpreted Rule 404(b) as an

---

[6] On the video recording from the July 12, 2023 buy, the defendant is seen in *actual* possession of the bookbag where the large quantity of fentanyl was found. As he possessed the bookbag, the defendant is sitting in the bedroom where the bulk of the contraband was located.

7

"inclusive rule" allowing the admission of relevant "other acts" evidence if that evidence is offered to prove something other than criminal propensity. *United States v. Gray*, 405 F.3d 227, 239 (4th Cir. 2005). A four-part test is applied to determine the admissibility of evidence under Rule 404(b): (1) the evidence must be relevant to an issue other than character, such as intent, motive, knowledge, opportunity, preparation, plan, identity, or absence of mistake; (2) it must be necessary to prove an element of the crime charged, or to prove context; (3) it must be reliable; and (4) its probative value must not be substantially outweighed by its prejudicial nature (i.e., Rule 403 balancing test). *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997). "Evidence is reliable for purposes of Rule 404(b) 'unless it is so preposterous that it could not be believed by a relational and properly instructed juror.'" *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996).

    Here, each prong of the test is easily satisfied. The controlled buys are relevant to the issue of possession. The defendant has no valid property interest in 1704 Windsor Drive under the law. However, the controlled buys provide evidence of his connection to the property and his possessory interest in the drugs and gun found. As for the second prong, knowledge and intent, as discussed above, are requisite elements of the charged offenses that the government must prove. Evidence of the controlled buys will assist the government to establish these elements as the law requires.

The evidence of the controlled buys is reliable. Not only does the evidence satisfy the standard in *Armony*, but ECSO was heavily involved in the surveillance of the CS before and after the buys took place and the buys were recorded. Any testimony provided can be corroborated by the buy videos which show the CS accessing the house at 1704 Windsor Drive, interacting with the defendant and asking for drugs. While every hand-to-hand transaction is not recorded, the interactions with the defendant, length of time of those interactions, and footage to show that the CS did not ask anyone else for the drugs or interact with anyone else in a manner consistent with drug dealing is recorded. Therefore, the third prong is satisfied.

Lastly, the controlled buys survive a 403-balancing test. The defendant is alleged to have possessed with the intent to distribute 40 grams or more of fentanyl and over 6,000 bindles of said fentanyl was recovered. If the jury seeing such a large quantity of fentanyl survives such a test, surely seeing the defendant distribute a small, user amount of the same drug on several occasions does as well.

II. The Government May Introduce Evidence of the Defendant's Prior Firearm Possession.

The defendant's prior firearm possession and use detailed by the CS is intrinsic to the charged offense and therefore is not governed by Fed. R. Evid. 404(b) or, alternatively, such evidence should be admitted under Fed. R. Evid. 404(b)(2) for non-propensity purposes. The evidence shows the defendant's intent to possess firearms to protect his drugs. Such evidence is necessary to prove that the defendant

9

knowingly possessed the firearm on July 12, 2023 in furtherance of his drug trafficking offense.

### A. The prior firearm use and possession at 1704 Windsor Drive is intrinsic to the charged offenses.

Although the prior firearm use and possession involved activities that occurred before the charged time frame, it is not evidence of other crimes.[7] *See United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994). The conduct arose from the same series of transactions as the charged offense, that is, the defendant's use of 1704 Windsor Drive as a stash house to store and sell his drugs. ECSO conducted surveillance leading up to the buys that began in March 2023. During the surveillance, ECSO observed heavy foot and vehicle traffic, which led the agency to utilize the CS to conduct controlled buys from the defendant. Based on the timeline, the conduct observed by the CS at 1704 Windsor Drive took place during or just before the ECSO surveillance began.

Further, the information provided by the CS completes the story of the charged crimes. It shows that not only did the CS meet the defendant at the residence for each buy, but that others were also aware that the defendant stored and sold drugs at 1704 Windsor Drive.

Additionally, as discussed in the previous section above, knowledge is a required element of each of the counts of the indictment. The evidence from the CS about the defendant's prior firearm use and possession will be used to prove the defendant knowingly possessed a firearm and that he did so in furtherance of a drug

---

[7] The relevant law is detailed in full in the section I.

trafficking crime. His intent to protect the drugs in his stash house and to use a firearm to do so support this.

### B. In the alternative, the prior firearm possession and use is admissible to prove intent and knowledge.

Turning to the four-part test outlined in *Queen*, the defendant's prior firearm possession and use is admissible to prove his intent and knowledge. First, the evidence specifically shows the defendant's intent to possess a firearm to protect his drugs that he kept at 1704 Windsor Drive. Based on the details provided by the CS, "B-Lord" stole drugs from the defendant. In response, the defendant possessed and used a firearm to assault "B-Lord" and protect the drugs from any further theft.

Second, the evidence is necessary to prove an element of the crimes charged, and to also prove context. Counts One and Three require the government to prove that the defendant knowingly possessed a firearm. The evidence provided by the CS details the defendant's proclivity to possess a firearm and conceal it at 1704 Windsor Drive while he was at the residence. As to Count Three, the evidence provides context for the defendant's intent and purpose in keeping a firearm at the residence.

The evidence is reliable. The CS will describe the timeframe within which the conduct happened. Because it took place just before or during the time the CS performed the controlled buys, it is within some of the most recent memories the CS has at the residence prior to the defendant's arrest on July 12, 2023. The CS will testify that witnessing the assault made the CS feel sick which adds further reliability as to why the instance sticks out in the CS' mind. It is not preposterous that a drug trafficker would use a firearm to physically assault someone who stole

11

drugs from the drug trafficker. *See United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996). Therefore, the evidence is sufficiently reliable.

Fourth and finally, the evidence passes the 403-balancing test. All evidence is prejudicial, the touchstone for the Court is whether the probative value is substantially outweighed by its prejudicial nature. Here, it is not. The alleged, uncharged assault demonstrates the extent to which the defendant is willing to go to ensure his drugs are protected. *See United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996). The risk of the jury imputing the conduct described by the CS in an improper way is low and any such risk will be alleviated by the Court's limiting instruction. Therefore, the fourth part of the *Queen* analysis is met.

The evidence satisfies each of the four prongs and should be received as proper 404(b) evidence to show the defendant's intent to use firearms to protect his drugs and his knowledge of the firearm present on July 12, 2023.

III. <u>The Defendant May Not Introduce His Own Self-Serving Statements at Trial.</u>

The United States intends to introduce certain statements made by the Defendant, which is permitted under Fed. R. Evid. 801(d)(2)(A) as statements of a party opponent. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Unless the defendant's statements are offered at trial by the United States as an admission of a party-opponent, Fed. R. Evid. 801(d)(2), any out-of-court statements made by the defendant constitute inadmissible hearsay.

That rule does not change even when the government only introduces portions

12

of the defendant's statement to law enforcement. The rule of completeness permits an adverse party to introduce a writing or recording when "in fairness" it should "be considered contemporaneously" with the portion already introduced. *United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014). Fairness means "'prevent[ing] a party from misleading the jury' by failing to introduce the entirety of the statement or document." *Id.* (quoting *United States v. Bollin*, 264 F.3d 391, 414 (4th Cir. 2001). But "[t]he rule of completeness does *not* 'render admissible evidence which is otherwise inadmissible under the hearsay rules,'" nor does it "'require the admission of self-serving, exculpatory statements made by a party which are being sought for admission by that same party.'" *Id.* (quoting *United States v. Lentz*, 524 F.3d 501, 526 (4th Cir. 2008)) (emphasis added).

IV. <u>Defense Counsel Should be Prevented From Commenting or Cross-Examining Witnesses on Past Arrests, Dismissed Charges, or Non-Qualifying Convictions Under Rule 609.</u>

The government may present the testimony of civilian witnesses in its case in chief, some of whom have been arrested in their past and some of whom have sustained felony convictions. The government seeks an order from this Court preventing defense counsel from attempting to impeach a witness using prior arrests and charges for crimes of which they were not convicted. Under Federal Rule of Evidence 609(a), "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year," and "evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission

13

of an act of dishonesty or false statement by the witness." Arrests are not convictions. Dismissed charges are not convictions. Acquittals are not convictions. And the underlying factual basis for a prior conviction is generally not a proper subject for impeachment under Rule 609. *United States v. Lopez-Medina*, 596 F.3d 716, 737-38 (10th Cir. 2010); *United States v. Dansker*, 537 F.2d 40, 59-60 (3d Cir. 1976). Unless there is some other articulable, good faith basis for attempting to impeach a witness with prior arrests, dismissed charges, acquittals, non-qualifying convictions, or the underlying factual bases for prior convictions, no witness should be cross-examined in any manner about such subjects. The prosecution hereby requests an order from this Court directing that, pursuant to Rule 609, such cross-examination will not be allowed. Sustained objections in the presence of the jury during trial are a much less effective means of honoring Rule 609 than compliance with the rule before an improper question is asked.

V.     The Defendant and His Counsel May Not Refer to His Potential Sentence.

It is well settled that a defendant or his counsel may not inform the jury of the potential sentence the defendant faces if convicted at trial, including by cross-examining other witnesses about the potential penalties that these charges carry. *E.g.*, *United States v. Cropp*, 127 F.3d 354, 358-59 (4th Cir. 1997); *see also Shannon v. United States*, 512 U.S. 573, 579 (1994). The government asks the Court to instruct the defendant and his counsel that they may not make any reference, through examination, evidence, or argument, to the potential sentence the defendant faces.

14

## CONCLUSION

For the above reasons, the Government respectfully moves for the admission of its evidence and the exclusion of certain evidence and arguments, as outlined above. The foregoing is a summary of the facts, issues, and evidence the government anticipates will arise at trial. The government respectfully reserves the right to adjust its evidence as events dictate and to submit any further briefs and memoranda as become necessary.

Respectfully submitted, this 2nd day of February, 2026.

W. ELLIS BOYLE
United States Attorney

BY: */s/ Kimberly N. Dixon*
KIMBERLY DIXON
Assistant U.S. Attorney
Criminal Division
U.S. Attorney's Office, EDNC
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
kimberly.dixon@usdoj.gov
Telephone: 919-856-4805
Fax: 919-856-4487
NC Bar No. 49164

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has this, the 2nd day of February, 2026, been served upon the below party by using the CM/ECF system which will send notification to the following:

Lauren H. Brennan
150 Fayetteville Street, Suite 150
Raleigh, NC 27601
Lauren_brennan@fd.org

Edward D. Gray
150 Fayetteville Street, Suite 450
Raleigh, NC 27601
Edward_gray@fd.org

                                             BY: */s/ Kimberly N. Dixon*
                                                    KIMBERLY DIXON
                                                    Assistant U.S. Attorney
                                                    Criminal Division
                                                    U.S. Attorney's Office, EDNC
                                                    150 Fayetteville Street, Suite 2100
                                                    Raleigh, North Carolina 27601
                                                    kimberly.dixon@usdoj.gov
                                                    Telephone: 919-856-4805
                                                    Fax: 919-856-4487
                                                    NC Bar No. 49164